ROSE (SCOTT v.). See Case No. 12,545.

## Case No. 12,051.

### ROSE v. SIBLEY MACH. CO.[1]

Circuit Court, D. Connecticut. Oct., 1878.

PATENTS — NOVELTY — INFRINGEMENT — IMPROVED BACK FALL IN PAPER-PULP ENGINE.

[1. In suit to restrain infringement of letters patent granted to Peleg Rose on September 14, 1869, for an improved back fall in paper-pulp engines, the fact that other manufacturers, in repairing their engines, had previously approximated, but had not reached, the improvement covered by plaintiff's patent, does not affect the claim of plaintiff as first inventor.]

[2. A material and useful change in the process of manufacturing paper was produced by material changes in the form of the back fall, which changes plaintiff specified in two claims, the first of which was for a modification in form. Held, that one who used the material and useful part of the modification infringed plaintiff's patent.]

[Suit in equity by Peleg Rose against the Sibley Machine Company to restrain infringement of patent.]

Lucius Brown and Lafayette S. Foster, for plaintiff.

Solomon Lucas and George H. Watrous, for defendant.

SHIPMAN, District Judge. This is a bill in equity to restrain the defendant from the alleged infringement of letters patent [No. 94,843], granted to the plaintiff on September 14th, 1869, for an improved paper-pulp engine, a machine for reducing rags and other paper stock to a pulp in the manufacture of paper. A paper-pulp engine consists of an oblong tub, containing a rotating cylinder, having bars on its periphery which work against cutters fixed in the bottom of the tub. In front of the cylinder is a wooden triangular device, called a "back fall," and formerly curved on the inside, or the side next the cylinder, to correspond generally with the cylinder. The stock passes and repasses over the back fall in the process of being reduced to pulp. The improved "back fall" is the portion of the machine which is

---

[1] [Not previously reported.]

claimed to have been infringed. By the old general mode of construction, the inside of the back fall was carried up upon a uniform curve to a rounded angle at the top of the back fall, and from that point the outside of the back fall sloped to the bottom of the tub. In consequence of this method of construction, the pulp often became clogged before it went over the top of the back fall, and was turned back upon the bars of the revolving cylinder. The change was one of form, and consisted in making an outward or reverse curve near the top of the inside of the back fall, so that upon the inside there are two distinct curves, one concave and the other convex, both forming what is known as an "ogee." The outside of the back fall or the back slope is curved transversely. It is conceded that the change in the form of the outside is not material. Another portion of the alleged invention consisted in rounding the corners of the tub and of the "midfellow" or partition through the center of the tub longitudinally. The patentee says in his specification that his object in constructing the back fall, as shown, and filling the angles, was "to prevent the lodging of the fibre, and thereby allow of a more rapid and unobstructed current around the midfellow, while preventing the formation of pulp of uneven fineness, thus greatly improving the operation of the paper engine." By the change in the construction of the inside of the back fall, there is a substantial improvement; the pulp moves forward readily, a swifter current is created, and clogging is avoided.

The first claim, which alone is material to the controversy, is for "constructing the back fall of a paper engine with a top curving back from the cylinder, as seen at g, and with a curved back slope, as seen at h, substantially as described." The material question of fact in the case was that of novelty. A number of witnesses were introduced, who testified that back falls constructed upon the inside, like the form shown in the patent, were in use before the date of the patent, in the "Chelsea Mills" at Norwich, in the Platner & Porter Mill at Unionville, in the Hudson & Cheney Mill at Manchester, and in E. W. Cooper & Sons' Mill at Madison, all in Connecticut. The Platner & Porter and the Hudson & Cheney machines, it was claimed, were changed from the old to the new style, by repairs to meet the needs of the manufacturers, before the date of the plaintiff's invention. The upper part of the back falls of all these machines was further distant from the bars of the cylinder, and the inside of the back falls had a greater inclination from the cylinder at the top, and gave a greater clearance to the pulp, than was usual at the time when these machines were manufactured or repaired. The tops were rounded instead of being at an acute angle, but I do not think that there were in any of the back falls two distinct curves upon the inside,

one concave and the other convex, making an ogee, which is the distinctive part of the plaintiff's invention. The preponderance of the testimony of paper-mill wrights and experts in paper-mill machines satisfies me that the plaintiff first attained an improvement in the construction of this class of machines to which other manufacturers in repairing their machines had approximated, but which they had not reached. The defendant, shortly before the commencement of the suit, made and sold one paper-pulp engine which was constructed upon the inside of its back fall substantially in the form specified and shown in the patent. The outside was not curved.

It is insisted that in this case there is no infringement, the patent being for a combination of three or at least two elements, and one element of the combination only having been used by the defendant. The patent is not for a combination of old or of new ingredients. It is for an improvement consisting in a change in the form of well-known parts of a machine. A material change of form which produces a material and useful change in the process of manufacture is patentable. The particular changes were specified in two claims. The new mode of construction which was specified in the first claim is not a combination of different things or different arrangements brought together to accomplish a given end, but is an alteration or modification, in respect to form, of the old method of constructing one of the devices which entered into the machine. Seymour v. Osborne, 11 Wall. [78 U. S.] 516. The defendant has used the material and useful part of the modification specified in the first claim, and therefore has infringed. Rich v. Close [Case No. 11,757]; Fuller v. Yentzer, 94 U. S. 288. Let there be a decree for an injunction and an account.