## FOAMITE–CHILDS CORPORATION v. PYRENE MFG. CO.

District Court, D. Delaware. October 6, 1927.

No. 544.

I. Patents ⊜ 165(1)—Broad claims must, if possible, be construed to have different meaning from specific claims.

Broad claims must be construed, if possible, to have different meaning from that of specific claims; but such meaning must be found in the means described for producing the desired result.

2. Patents ⊜ 328—Laurent, No. 858,188, for fire-extinguishing apparatus, held not infringed.

Laurent patent, No. 858,188, for hand fire-extinguishing apparatus, held not infringed.

In Equity. Suit by the Foamite-Childs Corporation against the Pyrene Manufacturing Company. Complaint dismissed.

Oscar W. Jeffery and Harry G. Kimball (of Jeffery, Kimball & Eggleston), both of New York City, and Francis De H. Janvier, of Wilmington, Del., for plaintiff.

Charles Neave and Maxwell Barus (of Fish, Richardson & Neave), both of New York City, and William G. Mahaffy, of Wilmington, Del., for defendant.

MORRIS, District Judge. Claims 1, 3 and 6 of patent No. 858,188, to Laurent, for a hand fire-extinguishing apparatus, now owned by the plaintiff, Foamite-Childs Corporation, are here in issue. The defendant, Pyrene Manufacturing Company, is charged with infringing these claims. The chief defense is noninfringement, the soundness of which turns upon the scope of the claims to be arrived at by interpretation.

The first claim calls for "a fire-extinguishing apparatus, comprising a receptacle containing separated gas-producing fire-extinguishing substances and a foam-producing substance, which causes the substances to produce a gas-filled foam simultaneously with the evolution of gases." Claim 3 differs from claim 1 only in that it specifies that the foam-producing substance is to be mixed with one of the fire-extinguishing substances, while claim 6 specifies "an extract of licorice root" as the foam-producing substance employed. Each claim is for an apparatus.

During the prosecution of the application in the Patent Office claims calling for "a

fire-extinguishing apparatus, comprising a receptacle containing separated gas-producing fire-extinguishing substances and a foam-producing substance," were rejected upon patents of the prior art for hand fire-extinguishers, comprising a receptacle containing separated gas fire-extinguishing substances, such as a soda solution and an acid, which, upon being mixed, by breaking the acid container or otherwise, generated gas and ejected a liquid, and upon patent to Gates, No. 749,374, disclosing a fire-extinguishing process, which consisted in projecting against burning surfaces latherlike bubbles containing noncombustible gases. The Examiner held that no invention was required to use the bubble-producing emulsion of Gates in the old soda and acid apparatus. The patentee met this rejection by adding to his claims the phrase "which causes the production of a gas-filled foam simultaneously with the evolution of the gases." At the time of the amendment the patentee pointed out that in the patent to Gates the gases, produced in advance and stored under pressure in a reservoir connected with the apparatus, produced foam, when the apparatus was put in operation, by their passage through or into the soaplike emulsion, while in the apparatus of the patentee "the gases in statu nascendi produce the gas-filled foam." He likewise asserted that his apparatus differed from the old soda and acid extinguishers, in that the latter had "no mixing chamber, and, of course, no narrow discharge openings between the mixing chamber and the several compartments of the apparatus."

The plaintiff here contends that, because foam will float upon burning oil and adhere to burning surfaces, it is the best known fire-extinguishing medium. It has established that, by the chemical action of the substances upon mixing, the apparatus of the patent simultaneously produces and ejects foam equal in quantity to eight or ten times that of the liquid contents of the apparatus; that this is accomplished at a pressure less than half that of the soda and acid extinguisher, and that there has been an ever-increasing demand for the chemical foam extinguisher. It contends that the patentee was the first to produce such an extinguisher, and that, though some of the claims of the patent are expressly limited to an apparatus having a mixing chamber, the claims in suit are not so limited, and should not be so narrowed by interpretation. The defendant, on the other hand, shows that its apparatus has no mixing chamber and no structural arrangement that functions as such. It contends that, to be sustained, the claims in suit must be restricted to a chemically acting extinguisher having either a mechanically distinct mixing chamber or an arrangement of parts which causes it to function as if such mixing chamber were present.

Obviously the phrase added by the amendment served, as was said by the patentee, to distinguish the invention of the patent in suit from that of Gates, in that the latter functions mechanically while the former functions chemically. But upon that phrase a further burden was imposed, namely, to distinguish the claimed apparatus from the old soda and acid extinguishers, and from such extinguishers when employing an added foam-producing substance. It is, of course, manifest that the claims as amended may not cover all forms of apparatus which cause the contained substances to produce a gas-filled foam simultaneously with the evolution of gases, for such interpretation would invalidate the claims by making them functional, or for a result, as well as broad enough to cover the old soda and acid extinguisher, when employing the Gates foam-producing emulsion. Consequently the problem here presented, as I see it, is to translate, by interpretation, the words of the amendment into the terms of the novel mechanical means, if any, described in the specification and drawings or their equivalents. Corning v. Burden, 15 How. 252, 268, 14 L. Ed. 683; Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103; Westinghouse v. Boyden, 170 U. S. 537, 553, 554, 18 S. Ct. 707, 42 L. Ed. 1136; American Crayon Co. v. Sexton, 139 F. 564, 566 (C. C. A. 6).

The structure of the patent most fully described is that illustrated in Figure 1. It has a mechanically complete and distinct third compartment or mixing chamber, into which, by inverting the extinguisher, the two liquids containing, one or both, the foam-producing substance, may be caused to flow through restricted openings. There the portions of the liquids entering the mixing chamber are "gradually mixed together and there produce foam." The pressure thus produced stops the flow of the liquids into the chamber and ejects the foam. The ejection of the foam reduces the pressure in the chamber, and permits the inflow of further portions of the liquids to form more foam. "In this manner the two liquids are gradually and intermittently poured" into the mixing chamber there to form the foam which is ejected from the nozzle.

[1] This structure, however, is covered by specific claims not here in suit. Consequent-

ly the broader claims in issue must be construed, if possible, so as to give to them a meaning different from that of the specific claims. Diamond Match Co. v. Ruby Match Co. (C. C.) 127 F. 341; Thomson-Houston Electric Co. v. Nassau Electric R. Co. (C. C.) 110 F. 647. But the meaning so to be given them, if broader, must nevertheless be found in the means disclosed in the patent for producing the desired function or result.

With respect to other forms of apparatus the specification says only: "The modified form of the apparatus illustrated in Figs. 2 and 3 differs from that described above, in that the formation of the foam is not produced by completely inverting the apparatus, but merely by inclining it as far as the horizontal position. In the form represented in Figs. 4 and 5 the vessel b is divided into two compartments by means of a vertical partition l; one of these compartments serving for the reception of the vessel a containing the acid, while the other is charged with a soda solution." It is not disputed that the apparatus of Figure 2, of which Figure 3 is but a different view, contains a mixing chamber, though of a design different from that of Figure 1.

Though the apparatus of Figure 4, of which Figure 5 presents a different view, has no mechanically or structurally complete mixing chamber, it has, as I understand the drawing, a section so blocked off by the arrangement of its parts that a complete mixing chamber is formed through the aid of the soda solution, when the apparatus is placed in a horizontal position for use. It then functions as if the mixing chamber were mechanically and structurally complete. This conclusion is supported and strengthened, I think, not only by the oral evidence, but as well by the specification, which points out that in the extinguishers hitherto employed the two or more liquids have been "completely mixed," while in the invention of the patent the mixture of the liquids takes place "in such a manner that only the quantities required for the formation of a certain quantity of foam are mixed together, and further mixing takes place gradually, as this foam is sprayed out." As a result of this, it is stated, the operation of the appliance may be caused to cease at any moment, and it may be restarted at any time, as long as the apparatus contains any of the liquids. In the absence of a more or less mechanically complete mixing chamber this asserted difference between the old extinguisher and that of the patent ceases to exist.

Again, it is stated that the new extinguisher operates at low pressure, while the pressure of those hitherto employed became relatively high. But as, apart from the size of the nozzle orifice, about which the patent says nothing, the pressure is dependent upon the speed or extent of the chemical reaction, the high pressure of the old structures was obviously due to "complete mixing," while the low pressure of the new structure is attributable to gradual and intermittent mixing of the liquids. Consequently this difference, also, is dependent upon the presence or absence of a mixing chamber more or less mechanically complete. While the demand for foam extinguishers has constantly increased during the last decade, the evidence is not convincing that such increase has been attributable to the patent in suit, or that the claimed apparatus has made any impress upon the art.

[2] Being of the opinion that the claims in suit must be limited to chemically operated foam extinguishers, which, though not having a mechanically complete mixing chamber, are nevertheless constructed with a chamber sufficiently complete to enable the apparatus to operate as described in the patent, and finding that the apparatus of defendant is not so constructed, the bill of complaint must be dismissed.