# 640

## OTTINGER et al. v. FERRO STAMPING & MFG. CO.

### No. 5890.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1932.

W. H. Davis, of New York City, for appellants.

Charles B. Belknap, of Detroit, Mich., for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

### HICKENLOOPER, Circuit Judge.

Appellants brought their action in the court below for injunction and accounting, alleging the infringement by appellee of claims 1, 2, and 4 of reissue patent No. 15,- 569, to Leon Ottinger (application January 29, 1920), hereinafter referred to as the reissue patent in suit; claim 16 of patent No. 1,436,050, to Leon Ottinger (application October 24, 1921), hereinafter referred to as Ottinger's second patent; and claims 1 and 3 of patent No. 1,468,954, to Seymour M. Bradley (application May 17, 1921), hereinafter referred to as the Bradley patent. The District Court found that none of these claims was infringed, and dismissed the bill of complaint. This appeal followed. A typical claim from each patent is printed in the. margin.[1]

All the patents in suit have to do with latches for vehicle doors especially adapted to the inclosed type. of automobile, and in the use of which the exterior handle may be locked against rotation without affecting the free reciprocating movement of the latch bolt by force applied directly to its end. With this equipment the windows of the vehicle may be closed, the locking device set upon all doors, or all doors but one, that one being equipped with means for locking or unlocking' from the outside by use of a key, and the doors, if open, may be thereafter closed without affecting the locking device already set.

At the time of application for the patents in suit, it had long been customary to retract the bolt of a vehicle door latch either from the outside of the vehicle by rotation of an exterior handle, to the spindle of which was affixed a cam contacting with a depending arm or projection on the latch bolt, or from the inside by use of a pivoted lever, also equipped with a roll-back contacting with an upwardly extending projection of the bolt.

---

[1] Reissue No. 15,569, Claim 1:
"In a latch, a rectilinearly movable latch bolt, means for retracting said bolt including independently operable members each adapted to effect retraction of the bolt, and a single means for preventing retraction of the bolt by the actuation of either of said members but permitting, when in its effective position, of the retraction movement of the bolt by pressure directly applied to one end of the bolt."

Patent No. 1,436,050, Claim 16:
"In a latch, a latch bolt, retracting means for said bolt, including a rectilinearly shiftable member movable in a plane parallel with the operating plane of said bolt, and means carried by said member adapted to coact with a part of the latch mechanism when said member is shifted in one direction to lock the bolt against retraction."

Patent No. 1,468,954, Claim 3:
"In a latch for vehicle doors, the combination with a latch-bolt and a sliding handle lever adapted to move said latch-bolt, a roll-back by which the latch-bolt may be moved from the outside of the door, a pivotal dog arranged in line with the movement of said roll-back, and connections between the dog and latch-bolt lever whereby the dog may be moved into or out of its locked position by the movement of the said latch-bolt lever."

See patent to Tiesing, No. 243,006, June 14, 1894. The vehicle latch of the Tiesing patent had no lock, but in the French patent to Davignon, No. 378,156, dated May 25, 1907, we have a vehicle latch operable by an exterior rotating handle, with a cam contacting an abutment upon the latch bolt, or by an interior pivoted lever, also contacting with a similar abutment upon the bolt. This latch was provided with a locking device for the exterior handle in the form of a cam, in shape the segment of more than 180° of a circle, which might be brought into engagement with a complementary notch in the top of the roll-back for that handle, thus immobilizing the roll-back. This immobilizing means could be removed from engagement from the exterior by a key, or the door unlocked manually from within, but the unlocking operation could not be performed simply by retraction of the pivoted lever (see Bradley's patent and Ottinger's second patent, infra). It is to be noted, however, that as early as 1907 Davignon had conceived the utility of permitting the free retraction of the bolt by use of the inside lever, or by pressure directly exerted upon it, even after the roll-back for the exterior handle had been locked, thus permitting the door to be thereafter opened from the inside, or closed, without effect upon the locking means. This was also common in ordinary house-door latches.

In the patent to Ochsner, No. 1,331,166, application filed November 18, 1919, the cam rotated by the exterior handle was transferred from beneath the latch bolt, as in Tiesing, to above it (compare also arrangement in patent to Fest, No. 378,582 [1888] and patent to Davignon, supra), and the extension of the bolt with which this cam or roll-back contacted was curved partly around the spindle and was shorter than the roll-back, so that the latter, extending vertically upward, overtopped the projection with which it was designed to contact. Ochsner provided a manually operable lock for the exterior handle in the shape of a pivoted dog which was normally elevated above the roll-back but could be lowered to blocking position, being frictionally held in either position by a spring-actuated ball which fitted into slight depressions provided for the purpose. Ochsner also had the idea, likewise present in some of the earlier devices (see patent to Manning, No. 941,327 [1909], and patent to Daniels, No. 215,580 [1879], to be hereafter discussed), of unlocking the exterior handle simply by the retraction of the bolt by the interior lever. This had the accompanying objection in Ochsner's device, however, that, if the locking means was set with the door open, and the door then slammed, the retraction of the latch bolt through the closing of the door would also unlock the exterior handle.

In his reissue patent in suit, Ottinger provided a locking means in the form of a separable, manually operated, sliding bolt pin having at its outer end a knurled head. When this pin was pressed to its inward position, it constituted an abutment, preventing rearward movement both of the inside lever and, through a connecting rod, of the roll-back for the outside handle, but permitting free reciprocating movement of the latch bolt. When the pin was forced outwardly, either by manual pull or by a key, the abutment was removed and the latch unlocked. We see little, if anything, of patentable novelty in the device of this patent, or of justification for the broad claims which were inserted upon reissue. In our opinion, the French patent to Davignon and the ordinary house-door latch were complete anticipations, for the desired result is there accomplished in substantially the same manner, the blocking of the roll-back for the exterior handle. Nor do we think that it would require more than mechanical ability to so modify the latch of Ochsner, or even the latch of Pfleghar (patent No. 914,669, 1909), so as to produce Ottinger's reissue device, if there were, in fact, any advantages or elements of increased utility of this latch over those of the prior art. We need not therefore consider the question of infringement of this patent.

The inventive concept underlying the second Ottinger and the Bradley patents in suit was more imaginative—possibly a helpful criterion in determining the existence of invention. Ochsner had conceived the existence of greater utility in a vehicle door latch which could be unlocked by simple retraction of the latch bolt by the inside lever. This, however, did not permit the closing of the door, after the lock was set, without also unlocking it. Ottinger, in his second patent, and Bradley in his patent, had the concept of a latch which was both locked and unlocked by manipulation of the interior lever and in which the slamming of the door and the incidental movement of the latch bolt would not affect the locking mechanism. This same concept underlay the patent to Manning, supra, and was in part suggested by the complex mechanism of the patent to Daniels, supra. It is true that both of these patents dealt with house-door locks having outside and inside

642

knobs, but there is no mechanical difference between a pivoted lever operating directly upon an abutment on the bolt and a rotating spindle equipped with a roll-back. The one is the exact mechanical equivalent of the other. Nor do we see a distinction between vehicle door latches and similar latches upon house doors.

It should also be remarked that in the Daniels device the obstacle was interposed, not simply to prevent movement of the roll-back, but to the retraction of the bolt itself, as in the patent to Schoell, No. 1,237,103, August 14, 1917; and these latches therefore lacked the element of utility found in the earlier patent to Davignon. In Manning's device, however, the lock for the exterior knob is set by a reverse rotation of the interior knob which brings a tooth or dog into engagement with a recess in the roll-back for the former, and this tooth is also moved out of engagement by the normal movement of the interior knob to retract the bolt. The bolt itself is not "deadlocked," but remains at all times freely movable by direct pressure upon it.

This, then, was the state of the art at the time Ottinger and Bradley entered the field. Although they probably had no actual knowledge of any of the patents above discussed, except as knowledge may have been brought to them in the course of the prosecution of their applications, they are charged with such knowledge as well as with common practices already old in the art. It was thus old in the art to operate a latch of a vehicle or house door by an exterior rotating handle, the spindle of which was equipped with a roll-back contacting with an arm or abutment upon the latch bolt, and by an interior pivoted lever, itself acting as the roll-back. It was also old to lock such latches by interposing an obstacle to the movement of the roll-back of the exterior handle, and to perform this operation by moving the interior lever in the direction opposite to that used to retract the bolt. It was likewise old to unlock such exterior handle through retraction of the bolt by normal use of the interior lever.

What Ottinger and Bradley contributed to the art, if anything, was the combination of their specific means whereby the exterior handle could be both locked and unlocked by movement of the interior pivoted lever, without "deadlocking" the bolt so as to prevent the closing of the door after the lock was set. This function or result of their devices was not, of course, patentable, but

only the means or apparatus by which the result was achieved. Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103; Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 556, 18 S. Ct. 707, 42 L. Ed. 1136. The art was already crowded, and, while it is difficult to see how much more than a fair degree of mechanical ability was required to devise means whereby the bolt could be both locked and unlocked by motion of the interior pivoted lever, assuming that the need for such a device was realized, we find nothing in the prior art precisely like the Bradley patent, and we are not disposed to deny to him a monopoly of the particular means he has disclosed. Bradley was not, however, a pioneer. The art was crowded, and he is entitled to but a narrow range of equivalents.

Turning to the question of infringement of the Bradley patent, we find that the means he used to interpose the obstacle to the movement of the roll-back was a pivoted dog with sliding link connection to the inside lever. As was the case in practically all of the earlier pivoted levers, Bradley's lever is sharply curved forward above the pivot. Thus, when drawn back, as in retracting the bolt, there is a vertical movement to the shaft which, through the device of the sliding link connecting the lever and the dog, raises the dog from the locking position. It was held in such raised position by a spring and ball friction means. When the lever was pushed in the opposite direction, a rotating motion upon the pivot was given to the dog, thus forcing it into locking position. The feature of most obvious novelty was the sliding link, and we do not find this mechanical arrangement in any of the defendant's devices. To give the claims such broad construction as would cover the defendant's devices would be to invalidate them either as functional or as disclosing merely the use of mechanical ability in view of the prior art. Bradley is not entitled to this broad interpretation of his claims. We therefore concur in the finding of the District Court that this patent is not infringed.

The second patent to Ottinger, No. 1,-436,050, was applied for October 24, 1921, or slightly over five months after Bradley had applied for his patent in suit. To some extent Ottinger had the same vision as Bradley in respect of the convenience and utility of a device by which the exterior handle could be locked and unlocked against rotation by manipulation of the interior pivoted lever, but Ottinger's mechanism was adapted to interpose the obstacle to movement of the

exterior handle roll-back by a direct, as distinguished from an indirect, vertical movement of the inside lever upon its pivot. Although the Bradley patent did not issue until after Ottinger's second patent, the application antedated that of Ottinger. On the same day that the Bradley application was filed, also, application was filed for patent to Kaimer and Ritter, No. 1,415,839, and this latter patent actually issued six months before the Ottinger patent. Both the Bradley patent and the Kaimer and Ritter patent show a vertically movable rod or means for locking the roll-back of the exterior handle by its vertical motion. It is true that in these two patents the interior control of the latch is by a rotating spindle instead of by the pivoted lever, and the rod controlling the lock passes longitudinally through this spindle; but in both the Bradley device and the Kaimer and Ritter device we find the concept of interposing an obstacle to the motion of the roll-back by the vertical movement of a rod within a rotating spindle, and in Bradley, in addition, we find one form shown wherein it is the vertical movement of the pivoted lever itself by which the obstacle is interposed.

Both Bradley and Kaimer and Ritter must be considered prior art as respects Ottinger's second patent, and in view of the disclosures of these two patentees, and of the state of the art, we are unable to attribute to Ottinger more than the exercise of mechanical skill in his five or six different concepts of means for locking the exterior handle by vertical movement of the interior lever. Given the idea of the utility and need for such a device, as disclosed by Bradley and by Kaimer and Ritter, Ottinger merely substituted one well-known type of securing vertical movement in his pivoted lever for the method used by Bradley or for the separate rod of Bradley and of Kaimer and Ritter. His device lacks entirely that quality of imagination or vision in the field of the theretofore unknown which distinguishes invention from mere exercise of mechanical skill.

Were the question of infringement of the Ottinger second patent dependent solely upon a vertical movement of a pivoted lever controlling the centrally pivoted dog, we might have some difficulty in holding that the use of an additional link in the defendant's dog mechanism, so that it locks by a downward movement and unlocks by an upward movement (the plaintiff's devices locking by an upward movement and unlocking by a downward movement), constituted a departure from Ottinger's disclosed means sufficient to avoid even a narrow application of the doctrine of equivalents. However, this type of defendant's mechanism uses the rotating spindle instead of the reciprocating pivoted lever, and the device might thus be held to follow the teachings of neither Bradley, Kaimer and Ritter, nor Ottinger, and not to operate in substantially the same manner as any of them. We are therefore content to decide the case on the ground of noninfringement without passing upon the validity of the Ottinger second patent.

The decree of the District Court dismissing the bill is affirmed.