## SWAN CARBURETOR CO. v. CHRYSLER CORPORATION.

### No. 8943.

Circuit Court of Appeals, Sixth Circuit.
June 29, 1942.

F. O. Richey, of Cleveland, Ohio (B. D. Watts, H. F. McNenny, and Richey & Watts, all of Cleveland, Ohio, on the brief), for appellant.

Charles H. Walker, of New York City, and J. King Harness, of Detroit, Mich. (Charles H. Walker and Fish, Richardson & Neave, all of New York City, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from the dismissal of a complaint charging that certain intake manifolds used on the internal combustion engines of the appellee in its Dodge, Plymouth and De Soto automobiles infringe Swan patents 1,636,721 and 1,536,044. Claims 5 and 7 of patent 1,636,721, and claims 4, 5, 8, 9, 10, 13, 22 and 23 of patent

392

1,536,044 are in suit. The District Court found that none of the claims are infringed.

Both of these patents have been before this and other courts in prior litigation.[1] We do not deem it necessary to enter into a prolonged discussion of the prior art or the theory of the Swan invention, which was upheld in this court upon the ground that Swan had solved the problem of the proper distribution of gasoline to the cylinders of the internal combustion engine. With the increase in the demand for motor fuel, gasoline was produced which contained large amounts of low volatile hydrocarbons. As a result, particles of unvaporized or liquid fuel gathered upon the sides of the manifold and caused unequal distribution to the cylinders. By the configuration of his manifold Swan created at specified points a turbulence in the fuel mixture so that the heavy particles of gasoline became revolatilized and a satisfactory mixture and substantially equal distribution resulted. It is the claim of appellant here that the accused devices achieve exactly the same results by creating a similar turbulence and that the devices hence infringe. Appellee contends and the District Court in effect held that while appellee's manifolds secure satisfactory distribution of the fuel mixture they obtain this result by an entirely different means, namely, through the application of heat to manifolds based upon the prior art, as exemplified by Matheson and Fiat. The use of heat had been the solution recommended for the problem in a committee report published in the Journal of the Society of Automotive Engineers for July, 1920, page 25, and while this method was not employed in practicable manner prior to the former cases, it is the contention of appellee that it uses this method of vaporization in the devices in suit.

Appellant urges that certain inter partes tests of appellee's and other engines show that the accused devices have an operation identical with that of Swan; that numerous material findings of the District Court were erroneous, due to its misunderstanding of the evidence resulting from failure to observe these tests, and that the District Court, in finding non-infringement, has failed to follow the rulings of this and other courts with reference to infringement of the same patents by devices substantially identical with appellee's manifolds.

Road tests covering hill climbing, fuel economy, and acceleration were conducted with great detail by both parties. In appellant's tests the Dodge and Plymouth downdraft manifold was compared with the downdraft manifold of the Swan preferred form.[2] The heating device, or "hotspot" used by appellee on all its manifolds was employed in all of appellant's inter partes tests, not only upon the accused manifolds, but upon the Swan manifolds. In appellee's tests the Dodge and Plymouth manifold was given road tests in comparison with manifolds constructed in exact conformity with the prior art, namely,

[1] In Swan Carburetor Co. v. General Motors Co., D.C., 42 F.2d 452, affirmed 6 Cir., 44 F.2d 24, certiorari denied 292 U.S. 897, 51 S.Ct. 181, 75 L.Ed. 790, an action for the recovery of royalties on a license contract, the District Court construed the scope of certain article claims of patent 1,536,044, particularly claim 23, and held that a manifold with header, riser and branches round in form but of the same area as Swan without curves, obstructions or recesses in the line of travel and with an abrupt right angle between the riser and the header and an abrupt right angle on the inner bend between the header and the branches, came within the Swan patent.

A similar result was reached when the patents were before this court in two actions for royalties, General Motors Corp. v. Swan Carburetor Co., 6 Cir., 88 F.2d 876, certiorari denied 302 U.S. 691, 58 S.Ct. 49, 82 L.Ed. 534. In a patent infringement case consolidated therewith [Reeke-Nash Motors Co. v. Swan Carburetor Co., 88 F.2d at page 885], claims 13 and 20 of patent 1,636,721 and claims 5 and 7 of patent 1,536,044 were held valid and infringed. The validity of other claims, including that of the method claims of patent 1,536,044, was not passed upon and as to such other claims the bill was dismissed without prejudice. An infringement suit involving article claim 20 of patent 1,536,044 was before the Circuit Court of Appeals of the Fourth Circuit in Nash Motors Co. v. Swan Carburetor Co., 105 F.2d 305. In that case a divided court held that the accused Nash manifold did not infringe.

[2] The accused devices include both updraft and downdraft manifolds. In the downdraft devices the position of the header and riser is reversed and the fuel mixture passes in a downward direction from the carburetor into the header. It is conceded by both parties that this fact does not affect the question of infringement.

Matheson and Fiat, all equipped with exhaust heaters similar to those used in the accused devices. Dynamometer tests for power, torque and volumetric efficiency were also conducted by appellee upon an original Matheson engine, and an original Fiat engine using the original manifolds in comparison with manifolds of Swan's preferred form, appellee's heating means being applied in every case. In these tests all the manifolds compared are agreed by both parties to have achieved substantially the same results in performance and to have given good commercial distribution. This general statement must be qualified by the fact found by the District Court, that the volumetric efficiency of appellee's engines decreased about ten per cent at the higher speeds with the application of heat.

We think that under this record the court's absence from the tests in no way impairs the validity of its conclusions as to their significance. Since both parties admit that substantially identical performance was secured under all the inter partes tests, and since the District Court's findings emphasized this fact, the circumstance that the District Court was absent when the tests were conducted is immaterial.

We are not impressed by the appellant's contention that the substantially identical results secured by the operation of these various manifolds demonstrates infringement. All of the inter partes tests were conducted upon manifolds which were equipped with and employed appellee's heating device, and the claims in suit do not provide for the use of any heating means. It is settled law that a claim for a result will not support a patent. Mitchell v. Tilghman, 19 Wall. 287, 86 U.S. 287, 22 L.Ed. 125; Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 48 S.Ct. 474, 72 L.Ed. 868. Cf. General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402. The securing of substantially the same result is only one element entering into the question. In absence of evidence that the result was secured by the same or equivalent means, the fact that the result is similar or even identical does not justify a holding of infringement.

It is not inconceivable that the same desirable result in vaporization of the heavy particles of gasoline secured by Swan's peculiar form of manifold might be achieved by totally different means. The fact that

Matheson and Fiat, which did not use heat, were classed as failures because they did not solve the problem does not require the conclusion that the problem never could be solved by the application of heat to Matheson and Fiat and that it has not been solved by appellee. The holding of this court that Swan solved the problem in one way does not exclude the conclusion that with the rapid advance of the automotive arts a similar result could be and was achieved through forms of manifolds theretofore found to be failures in handling a wet fuel mixture, to which an efficient and carefully controlled heating means is applied. The District Court found that appellee's manifolds follow the prior art instead of Swan, that they secure efficient results in equally distributing the fuel mixture through the use of a "hot-spot" exhaust heat jacket at the junction of the header and riser, and that appellee's manifolds are dependent upon this heating device for their satisfactory operation. Ex parte tests conducted by the appellant in which the operation of the heating means was modified or practically eliminated were relied upon to support a contrary conclusion. These tests were incomplete, and the District Court was free to accept appellee's testimony, based on other tests, that appellee's devices would not operate successfully without the application of heat.

Appellant argues that heating devices were used upon manifolds adjudicated in prior cases, and that a holding of non-infringement disregards the former holdings of this court. But the former cases involved totally different heating units. In the first General Motors case [42 F.2d 452] the accused manifold employed a heater surrounding the riser, which raised the temperature of the entire fuel mixture. This was held in effect to be supplemented by the configuration of Swan in attaining equal distribution. Appellee follows the teachings of the Society of Automotive Engineers' article of 1920, supra, and vaporizes the gasoline by heating the wall of the manifold against which the gasoline strikes at the junction of riser and header to a temperature considerably above the dew point, at the same time heating the air to a minimum degree to avoid excessive reduction in volumetric efficiency. The heat of the adjacent exhaust manifold also assists in preventing the fuel, which has been vaporized by the hot-spot, from condensing on the manifold walls. Appellant's

expert, Sessions, agreed that appellee's manifolds are carefully controlled to avoid loss of power due to excess heating. The other manifolds previously adjudicated to infringe used different heating devices securing a different and less desirable result, not shown to provide, as here, an independent solution of the problem of equal distribution.

Nor does the presence of liquid fuel in appellee's fuel mixture at certain times establish infringement as contended. The controlling question is whether appellee's devices equally distribute the fuel mixture by use of the Swan invention. If not, there is no infringement.

We do not consider it controlling that this court has held in two former cases based upon other records that Matheson and Fiat, to which the accused manifolds are closer than they are to Swan, failed to solve the problem of the equal distribution of low volatile gasoline. Matheson disappeared from the market long prior to the present litigation [42 F.2d 452, 457], and was never used with a heating device. The fact that Matheson and Fiat, with appellee's hot-spot attached, achieved results substantially equal to those of Swan and the accused manifolds, does not establish infringement. Rather it supports the findings of the District Court that the problem has been solved in two ways, and that the results obtained by appellee through the efficient application of heat are equivalent to those obtained by the Swan configuration.

Since appellee does not claim that Matheson and Fiat anticipate Swan, but merely that appellee follows Matheson and Fiat rather than Swan, the authorities urged upon us to the effect that an improved prior art cannot under the decisions be held to anticipate Swan, have no bearing.

Appellant's principal contention is that the hot-spot operation of appellee's manifold has to be supplemented with the Swan structure, and the Swan mode of operation, in order to secure equal distribution. But this record amply supports a contrary conclusion.

Appellee's accused devices, the Dodge-Plymouth downdraft manifold, the De Soto downdraft manifold, and the Dodge updraft manifold are equipped with hot-spot heaters. None of the claims in suit disclose the use of heat, and the specifications call attention to the loss of satisfactory engine performance involved in such use.

Swan solved the problem simply by the configuration of his manifold.

This court held [88 F.2d 876, 887] that the gist of Swan's inventive concept was to bring the fuel mixture from the carburetor to the header in substantially straight lines and abruptly change its course in the header and at the branches so as to create a maximum turbulence at the points where the direction of flow changed. It concluded that the achievement of this result was not limited to the use of header, riser, and branches square in cross-section, but that devices round in cross-section presenting sharp inside corners at the end-bends infringed. The Reeke-Nash manifolds, there in suit, also had level floors devoid of curves and recesses, and thus embodied several essential features of the Swan invention. Swan himself, not only by discussion in his specifications, but in the claims, made certain limitations of form essential, and it is the claims which define the invention. Claim 5 of patent 1,636,721 requires that the manifold be "devoid of curves and recesses in the direction of flow of the fuel mixture," that the main manifold duct be "level throughout its length" and form "a substantially uniformly sharp angle all around the connection" with the riser; and that the end branches be "perpendicular or substantially perpendicular" thereto and make "a right angle connection" therewith at the sides nearest the middle. In addition it calls for a "distributing zone with a non-recessed roof."

Appellant asserts that claim 5 is infringed by all of the accused manifolds. The Dodge and Plymouth downdraft plainly does not present this claim's essential features. Its header is not "level throughout its length" nor "devoid of curves and recesses in the direction of flow of the fuel mixture." It lacks the sharp inside corners at the end-bends, presented in the Reeke-Nash device, and does not have a "distributing zone with a non-recessed roof." The same elements are also lacking in the De Soto downdraft manifold. While the end-bends of the De Soto manifold have a radius of curvature less than that of the Dodge and Plymouth downdraft manifold, there are no right angle inside corners and the branches are neither "perpendicular" nor "substantially perpendicular" to the header. The Dodge updraft manifold lacks the sharp angles of the inside corners specified by Swan both at the

end-bends and at the top of the riser. None of the accused devices infringe claim 5.

Only the Dodge updraft manifold is charged to infringe claim 7. This claim presents all the above-quoted features of claim 5 except that it substitutes in the distributing zone a roof "having a curved portion" for a "non-recessed roof." Since the Dodge updraft manifold does not disclose essential features common to both claims it does not infringe claim 7.

■ It is also charged that the downdraft manifolds infringe claim 13 of patent 1,536,044. This claim provides for "a distributing chamber being formed of walls the intersections of which form straight lines." This feature was stressed before the Patent Office as being the important element of the claim; but none of the accused devices have any walls whose intersections form straight lines, and hence this claim is not infringed.

Claim 22 of patent 1,536,044 relates to the part of the roof of the header which is opposite the riser and requires it to be "symetrically formed and situated with reference to the outlets to uniformly influence entering mixture and cause the same to distribute in uniform character in the successive directions determined by the outlets and induction cycles of the engine."

■ Appellant's expert, Sessions, stated that it made no substantial difference whether the wall opposite the riser is flat (like Swan's preferred form), or curved (like Matheson and Fiat), and concedes that this claim adds nothing to the practical utility of the Swan invention. The claim describes the added element in terms of function and result, and hence is invalid.

Claim 23 of patent 1,536,044, in addition to presenting the above quoted feature of claim 22, provides: " * * * the outlet branches being angularly formed to register with the intakes of pairs of cylinders, and the angular formations being shaped and situated so that passing mixture will be influenced thereby in a manner tending to distribute equally to the cylinders of the pair to which the branches respectively relate."

■ As shown above, in the accused devices the outlet branches are not angularly formed, and hence this claim is not infringed.

The method claims, 4, 5, 8, 9, and 10 of patent 1,536,044, remain to be considered. Typical is claim 4, which reads as follows:

"A method of distributing a fuel mixture to an engine which consists in moving the mixture in a straight line to a zone from which it is distributed to a plurality of engine cylinders, directing said movement by forces which tend to distribute the mixture uniformly in all directions in a plane transverse to said movement, and further directing the movement of the mixture by forces tending to move it successively in a plurality of directions transverse to the original direction, to the cylinders."

■ While we did not deem it necessary in the General Motors case, supra, to pass upon these method claims, we now give them full consideration and conclude that they are all invalid. They describe no method of operation and no process except that which results from passing the fuel mixture through a manifold which is permanent and static in form. Mitchell v. Tilghman, supra; Fuller v. Yentzer, 94 U.S. 288, 24 L.Ed. 103; Knapp v. Morss, 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059. A process is an operation performed by rule to produce a result, but the operation presented in Swan consists entirely of mechanical transactions which are only the peculiar functions of the Swan manifold constructed to perform them. The turbulence which revaporizes the fuel mixture is caused by the configuration of the device itself. It is the established law that claims which describe merely the function and result of a machine are invalid as claims for a method or process. The monopoly cannot be duplicated by claiming separately the end or purpose sought to be accomplished. In addition, while the claims mention that the mixture is to be subjected to certain forces, it does not describe what these forces are nor how they operate, and this compels the conclusion that the claims are void for indefiniteness. General Electric Co. v. Wabash Appliance Corp., supra.

The decree is affirmed.