## NEWARK STOVE CO. v. LONERGAN MFG. CO.

### No. 246.

District Court, E. D. Michigan, S. D.
June 23, 1943.

Whittemore, Hulbert & Belknap, of Detroit, Mich., and Lederer, Livingston, Kahn, Adler & Adsit, of Chicago, Ill., for plaintiff.

Bulkley, Dickinson, Wright & Davis, of Detroit, Mich., and F. P. Keiper and John A. Barr, both of Chicago, Ill., for defendant.

LEDERLE, District Judge.

### Findings of Fact

1. This is a very simple patent case involving the validity and infringement of U. S. Letters Patent No. 2,021,581, issued November 19, 1935, to plaintiff's predecessor, as assignee of George E. Pickup, on application filed April 11, 1934, which patent is now owned by plaintiff, Newark Stove Company. The defendant, Lonergan Manufacturing Company, has a regular and established place of business in this District, and the alleged infringement occurred here.

2. The applicant described his invention as follows:

"The invention pertains to space heaters of the cabinet type and comprising an inner heating unit and an outer casing enclosing the heating unit. Heaters of this type are commonly referred to as circulating heaters in that air is drawn into the lower end of the casing for passage upwardly around the heating unit and for discharge at the top, usually through an open grillework. Thus, the heater sets up a circulation of air in the room or space to be heated, and has the effect of distributing heated air to points remote from the heater.

"The primary object of the present invention is to provide a heater of the general character indicated, which is constructed so as to permit of the conversion of the heater from the circulating type to a direct radiating heater, in order that the temperature of the space immediately adjacent the heater may when desired be raised with substantially greater rapidity than the more remote portions of the room.

"A further object is to provide a cabinet heater comprising an inner heating unit and an outer casing having front, side and rear walls spaced laterally from the heating unit and normally serving to direct currents of air upwardly through the casing, with certain of the walls constructed to provide one or more movable panels for exposing the heating unit and adapted to serve as reflectors for directing the radiated heat as may be desired."

In a communication to the Patent Office under date of July 25, 1935, the applicant's attorneys stated: "The present invention concerns a highly developed art. In such a case the invention, although small, may yet be real and entitled to the limited protection asked."

3. Only one claim was allowed, which reads as follows: "A room space heater comprising in combination, a vertically elongated heat radiating unit and an enclosing cabinet having a top wall with openings therein permitting the free passage of air therethrough, and front, rear and side walls spaced from the sides of the

unit so as to permit the upward passage of air about the unit for discharge through said top wall, each of said side walls having an opening of a size substantially co-extensive with the adjacent side radiating unit, panels having inner heat reflecting walls for closing the respective openings, and hinge means supporting said panels at their rear edges for swinging movement on vertical axes whereby to direct heat radiated sidewise from the heating unit forwardly into the room."

It is conceded by the plaintiff that the portion of the claim which reads: "whereby to direct heat radiated sidewise from the heating unit forwardly into the room", is purely functional in that it does nothing more than describe the function of the specific structural means which is named in the claim. Therefore, this portion of the claim may be disregarded.

4. The defendant admitted that it manufactured and sold the two accused heaters, Exhibits 41 and 43. Both of these structures read on the claim in suit and, if the patent were valid, would constitute infringements.

5. All of the original claims were rejected by the Examiner on the following references: Howell, 1699433; Lowell, 66365; Bunker, 1828642; Lehman, 1659694; Allen, 1604869; Pape, 1623634. When rejecting these claims the Examiner stated: "The particular holding means recited in Claim 5 is held immaterial to the combination claimed, being for a separate invention of wide application." Thereupon, the applicant withdrew this portion of his claim without prejudice to his right to file a divisional application. Repeated attempts of the applicant's attorneys to differentiate the structure disclosed in the application failed to convince the Examiner that the applicant's structure was not fully disclosed in the prior art cited. In a communication dated August 1, 1935, the Examiner suggested that amended Claim 8 would be allowed if the applicant further amended it by inserting after the word "panels", this language, "having inner heat reflecting walls". The applicant adopted this suggestion, and the claim was then allowed.

6. It is the claim of the plaintiff that the panels disclosed in the patented device could be lined with material which was especially adapted for the purpose of reflecting radiant heat, and that thereby the radiant heat could be directed to different portions of the space to be heated.

7. Elementary physics teaches that radiant heat rays travel in straight lines, and may be deflected if obstructed by a surface placed in their path. All the radiant heat that is not reflected is absorbed by the surface. All metals commonly used to manufacture space heaters reflect a portion of the heat. All of the panels or doors in the prior art devices would necessarily reflect a substantial portion of the radiated heat, and, when Claim 8 was amended in accordance with the suggestion of the Examiner, its amendment merely described the function that was inherent in the prior art devices. The applicant did not disclose the material to be used to line the reflector panels. If this patent is to be given any effect, it would mean that no circulating space heater could be made with panels on the side of the outer casing that would not infringe it. It was suggested by counsel for plaintiff that if the reflectivity of the material with which the panel was lined did not exceed ten percent, infringement would be avoided. There is no such limitation in the patent, and there should not be, for the reason that the reflectivity of the materials used to manufacture the prior art devices exceeded this limitation.

8. A German Patent, No. 33095, issued to Sturm in 1920, disclosed a structure which performed exactly the same functions as is claimed by the applicant for the Pickup patent, in exactly the same way, with exactly the same result. It differs from the device disclosed in the patent in suit in form only.

9. A patent to Pape, No. 1623634, issued April 5, 1927, discloses a device that is substantially identical with the device disclosed in the patent in suit except that the panels on one side of the rectangular heater are hung vertically, as in the patent in suit, and the panels on two sides are suspended horizontally. As a result of this combination, the panels on the Pape device can be used to reflect the heat in one direction as disclosed in the patent in suit, and in the other direction toward the floor. This device went into commercial use many years ago and was a commercial success. It is a complete anticipation of the patent in suit.

10. The evidence submitted in this case establishes beyond a reasonable doubt that

panels on other space heaters were in public use more than two years prior to the date of filing the application for the patent in suit. The device disclosed by the patent in suit differs from these prior art devices in form only.

11. The plaintiff attempted to establish commercial success of the disclosed device by showing that a number of licenses had been issued on a royalty basis, and that sums of money aggregating substantial amounts were paid by other manufacturers for the privilege of using the patent. This evidence is offset in part by the fact that some of the licensees were affiliated with the owner of the patent through common ownership of some of their stock, and further by the fact that the royalty charged was so small as to be insignificant in comparison to the selling price of the device marketed by the licensees.

12. The validity of the patent in suit was sustained by the District Court for the Middle District of Tennessee in the case of Newark Stove Co. v. Gray & Dudley Co., 39 F.Supp. 992. It was conceded here, however, that the record in the case at bar differs materially from the Tennessee case. The opinion in that case discloses that the defendant there failed in its attempts to establish the prior use of the prior art devices which reflect radiant heat. The record in this case establishes these prior uses beyond a reasonable doubt.

### Conclusions of Law

1. This is a case under the patent laws of the United States, complaining of alleged infringement in this District by a defendant having a regular and established place of business here, over which this court has jurisdiction. 28 U.S.C.A. § 41 (7); 28 U.S.C.A. § 109.

2. In doubtful cases of invention commercial success may be considered as evidence of invention, but when it is clear that there is no invention so-called commercial success is of no significance. Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed 1334; Electric Vacuum Cleaner Co. v. Geier Co., 6 Cir., 118 F.2d 221.

3. All of the claims filed by the applicant were properly rejected by the Examiner in the Patent Office upon the references cited. Adding to one of these claims the language suggested by the Examiner, to indicate that the panels disclosed could be used for reflecting radiant heat, merely described a function inherent in the disclosed structure, and this change in the language of the claim did not justify allowance. Swan Carburetor Co. v. Chrysler Corp., D.C., 34 F.Supp. 766; Id., 6 Cir., 130 F.2d 391.

4. The claim of the patent in suit is invalid for want of invention, and judgment shall be entered dismissing the complaint.