SIGNAL MFG. CO. et al. v. KIL-
GORE MFG. CO.

No. 12892.

United States Court of Appeals,
Ninth Circuit.

July 28, 1952.

C. A. Miketta, W. W. Glenny, Los
Angeles, Cal., for appellants.

Warren H. F. Schmieding, Columbus,
Ohio, Allan D. Mockabee, Los Angeles,
Cal., for appellee.

Before MATHEWS, HEALY and
POPE, Circuit Judges.

MATHEWS, Circuit Judge.

In the United States District Court for
the Southern District of California, The
Kilgore Manufacturing Company, an Ohio
corporation, hereafter sometimes called
Kilgore, brought an action against Signal
Manufacturing Company, a California
corporation, hereafter sometimes called
Signal. The complaint [1] was in two counts.
Count 1 charged Signal with infringing a
patent (No. 1,947,834) owned by Kilgore—
a patent containing 23 claims. Signal filed
an answer and an amended answer and
served interrogatories and requests for ad-
missions.[2] Kilgore answered the interroga-
tories and requests for admissions [3] and
caused four depositions [4] to be taken.

Thereafter, on motion of Signal and
Charles Schneider, a citizen of California,
Schneider was made a party defendant,
and Signal and Schneider were permitted
to, and did, file a second amended answer,
denying that they (Signal and Schneider)
infringed the patent,[5] alleging that the pat-

1. The complaint was labeled "Bill of com-
plaint."

2. See Rules 33 and 36(a) of the Federal
Rules of Civil Procedure, 28 U.S.C.A.

3. In one of its answers to requests for ad-
missions, Kilgore admitted that claims
6 and 12–23 of the patent were not in-
fringed by Signal.

4. One of Charles Schneider, one of Arthur
F. Hubbard, one of George N. Hatch and
one of Robert S. Long. At the trial, the

Schneider deposition was received in evi-
dence as Exhibit 3, documents attached
to the Schneider deposition were re-
ceived in evidence as Exhibit 4, and the
Hubbard, Hatch and Long depositions
were received in evidence as Exhibit 24.

5. In count 1 of the complaint, Kilgore had
charged that the patent was infringed by
Signal, thus, in effect, charging that all
claims of the patent were so infringed.
However, in answer to a request for ad-
missions, Kilgore had admitted that

ent was invalid and praying that the complaint be dismissed. The second amended answer contained a counterclaim denominated as such,[6] praying for a declaratory judgment holding the patent invalid and not infringed by Signal and Schneider and for costs and attorneys' fees.

Kilgore replied to the counterclaim,[7] a trial was had,[8] findings of fact and conclusions of law were stated, and a judgment was entered which held claims 1–9 and 12–23 of the patent invalid,[9] dismissed count 2 of the complaint,[10] held claims 10 and 11 of the patent valid and infringed by Signal and Schneider, enjoined such infringment, ordered an accounting of profits and damages, purported to dismiss the counterclaim,[11] held that Kilgore should recover costs and reserved decision as to other matters. Signal and Schneider have appealed.

Appellants (Signal and Schneider) do not complain or seek reversal of that part of the judgment which held claims 1–9 and 12–23 of the patent invalid and dismissed count 2 of the complaint. They do complain and seek reversal of other parts of the judgment, their contention being that they should have judgment holding claims 10 and 11 of the patent invalid and not infringed by them and ordering, adjudging

and decreeing that appellee (Kilgore) take nothing by the action, and that they recover costs and attorneys' fees.

The patent was applied for by Louis L. Driggs, Jr., and Henry B. Faber on September 19, 1931, was issued to them on February 20, 1934, and was acquired by appellee in July, 1947. The action was brought on October 16, 1947. The judgment was entered on February 1, 1951. The appeal was taken on February 17, 1951. The patent expired on February 20, 1951.[12]

The patent was for an alleged invention of Driggs and Faber. The specification of the patent stated: "This invention relates to flare signals.[13] It is the object of this invention to provide a flare signal and a detachable cartridge case therefor detachable from a holder or other firing mechanism. In particular, it is the object of this invention to provide a flare signal contained within a metallic case[14] having an integral base and side walls, the base being heavier than the side walls and the structure being preferably formed of a one-piece, drawn aluminum body, or other material of light weight and strength. In particular, it is the object of this invention to provide such a flare signal which may be interchangeably mounted within a cartridge

claims 6 and 12–23 were not so infringed. See footnote 3. Kilgore never charged that the patent or any claim thereof was infringed by Schneider. Therefore Signal and Schneider's denial raised no issue except as to Signal's infringement of claims 1–5 and 7–11.

6. See Rules 7(a) and 13 of the Federal Rules of Civil Procedure.

7. The reply was labeled "Answer to defendants' counterclaim."

8. One of the issues tried was whether Schneider infringed claims 1–5 and 7–11 of the patent. Although not raised by the pleadings, that issue was tried by express or implied consent of the parties. Therefore it is treated as if it had been raised by the pleadings. See Rule 12(b) of the Federal Rules of Civil Procedure.

9. Kilgore admitted at the trial that claims 6 and 12–23 of the patent were invalid.

10. Count 2 was referred to in the judgment as "plaintiff's second cause of action."

11. Actually, in holding claims 1–9 and 12–23 of the patent invalid, the judgment granted part of the relief sought in the counterclaim. The purported dismissal was, in effect, a denial of other relief there sought.

12. A disclaimer to claims 6 and 12–23 of the patent was entered in the Patent Office on February 13, 1951—12 days after the judgment was entered, 4 days before the appeal was taken and 7 days before the patent expired.

13. In the patent, the terms "flare" and "flare signal" were used interchangeably. As used in the patent, these terms had several meanings. Sometimes they meant combustible material which, when ignited, would produce a light to be used as a signal. Sometimes they meant a shell containing such material. Sometimes they meant a device comprising such a shell and a cartridge case.

14. Elsewhere in the patent, this metallic case was called a shell.

case from which it can be expelled by a powder charge,[15] such cartridge case being detachably mounted in and forming a portion of the barrel of a firing pistol. It is a further object to provide such a flare which can be used with a breech-loading pistol, as well as with a muzzle-loading pistol. * * *"

Several devices, each purporting to embody Driggs and Faber's alleged invention, were described in the specification and pictured in the accompanying drawings. Each device consisted of a combination of parts. Some of the combinations included cartridge cases. Each cartridge case was a cup-like structure consisting of a metal tube and a metal disk whereby the tube was closed at one end, the tube constituting the wall of the cartridge case[16] and the disk its base. Some of the cartridge cases were designed for use in a breech-loading pistol.[17] Others were designed for use in a muzzle-loading pistol.[18]

Each cartridge case designed for use in a breech-loading pistol had a base the diameter of which exceeded that of its wall, so that a part of its base projected outwardly from its wall, the projecting part constituting a flange.[19] When such a cartridge case was placed in firing position in the barrel of a breech-loading pistol adapted to receive it, the flange rested against the rear end of the barrel and prevented the cartridge case from moving out of firing position.

Each cartridge case designed for use in a muzzle-loading pistol had a base the diameter of which did not exceed that of its wall. Consequently it had no flange. However, it had around its base an annular groove. When such a cartridge case was

placed in firing position in the barrel of a muzzle-loading pistol adapted to receive it, a spring-pressed "nose," which projected through a wall of the barrel and was part of a "finger" pivoted on the pistol,[20] entered the groove and prevented the cartridge case from moving out of firing position.

The 23 claims of the patent described 23 combinations each of which Driggs and Faber claimed as their invention. However, we are here concerned only with claims 10 and 11 of the patent; for, as indicated above, all other claims of the patent were held invalid by the District Court, and that holding is not complained of. Claims 10 and 11 were as follows:

"10. In combination, a cartridge case having a base with an annular groove, a propelling charge chamber and a fuse mounted therein, said base carrying side walls, a telescopically-arranged shell mounted therein having a relatively heavy integral base and thin side walls, a fuse in the base of said shell communicating with the propelling charge of the cartridge case on one side and with an expelling charge in the shell on the other side, a flare and a parachute in said shell, and means to prevent the collapse of said parachute.

"11. In combination, a cartridge case having a base with an annular groove, a propelling charge chamber and a fuse mounted therein, said base carrying side walls, a telescopically-arranged shell mounted therein having a relatively heavy integral base and thin side walls, a fuse in the base of said shell communicating with the pro-

15. A charge of black powder sometimes called a fuse and sometimes called a propelling charge.

16. In the patent, the tube was called the side walls of the cartridge case.

17. Figure 2 of the patent drawings showed a cartridge case designed for use in a breech-loading pistol. Figures 5 and 10 of the patent drawings showed a breech-loading pistol adapted to receive such a cartridge case.

18. Figure 4 of the patent drawings showed a cartridge case designed for use in a muzzle-loading pistol. Figures 8 and 9 of the patent drawings showed a muzzle-loading pistol adapted to receive such a cartridge case.

19. In the patent, the flange was called a shoulder.

20. The "nose" and "finger" were shown in Figure 9 of the patent drawings.

pelling charge of the cartridge case on one side and with an expelling charge in the shell on the other side, a flare and a parachute in said shell, and means to prevent the collapse of said parachute, and detachable closure means for said shell engaging said means for preventing the collapse of the parachute."

Thus each of these claims described, and was limited to, a combination which included a cartridge case having an annular groove, which is to say, a cartridge case designed for use in a muzzle-loading pistol.

Appellants manufactured and sold a device an exemplar of which was received in evidence as Exhibit 2.[21] That device consisted of a combination of parts. The combination included a cartridge case having a flange, which is to say, it included a cartridge case designed for use in a breech-loading pistol. It did not include a cartridge case having an annular groove, which is to say, it did not include a cartridge case designed for use in a muzzle-loading pistol.

The District Court nevertheless held that the manufacture and sale of appellants' device constituted an infringement of claims 10 and 11.[22] That holding was clearly erroneous; for, as stated above, each of these claims was limited to a combination which included a cartridge case having an annular groove, which is to say,

a cartridge case designed for use in a muzzle-loading pistol.

We cannot agree with appellee that the flange of appellants' cartridge case was the equivalent of the annular groove of the cartridge case described in claims 10 and 11. The flange and the groove produced results which were somewhat similar, but produced them by means which were wholly dissimilar. Therefore they were not equivalents.[23]

Holding, as we do, that claims 10 and 11 were not infringed, we are not required to consider the question of their validity. The patent having expired, that question now has little, if any, public importance.[24] We therefore leave it undecided.

That part of the judgment which held claims 1–9 and 12–23 of the patent invalid and dismissed count 2 of the complaint is affirmed. All other parts of the judgment are reversed, and the case is remanded to the District Court with directions to enter judgment holding claims 10 and 11 of the patent not infringed by appellants and ordering, adjudging and decreeing that appellee take nothing by the action and that appellants recover costs of appellee. Upon entry of such judgment, the District Court may, in its discretion, award reasonable attorneys' fees to appellants.[25]

Judgment affirmed in part and reversed in part and case remanded with directions.

21. In the findings, appellants' device was called a flare. In the judgment, it was called a flare signal.

22. There was no holding, nor any basis for holding, that there was any other infringement of claims 10 and 11.

23. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 571, 18 S.Ct. 707, 42 L.Ed. 1136; Stebler v. Porterville Citrus Ass'n, 9 Cir., 248 F. 927; Ruth v. Climax Molybdenum Co., 10 Cir., 93 F.2d 699; Montgomery Ward & Co. v. Clair, 8 Cir., 123 F.2d 878; Swan Carburetor Co. v. Chrysler Corp., 6 Cir., 130 F.2d 391; Flowers v. Austin-Western Co., 7 Cir., 149 F.2d 955.

24. Cf. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644; Helbush v. Finkle, 9 Cir., 170 F.2d 41; Patent Scaffolding Co. v. Upright, Inc., 9 Cir., 194 F.2d 457.

25. See 35 U.S.C.A. § 70.