**DAILEY v. LIPMAN, WOLFE & CO.**
No. 8118.

Circuit Court of Appeals, Ninth Circuit.
Feb. 15, 1937.

Samuel S. Jacobson and Jaureguy & Tooze, all of Portland, Or., for appellant.

Clarence E. Threedy of Chicago, Ill., and Dey, Hampson & Nelson, of Portland, Or., for appellee.

Before GARRECHT, DENMAN, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Plaintiff appeals from an adverse decree in a suit for infringement of a patent issued to plaintiff, No. 1,945,422.

The relief asked by plaintiff was that his patent be declared valid and infringed by defendant; that defendant be enjoined from using, manufacturing, or selling devices made in accordance to the invention patented; for an accounting, and other relief unnecessary to relate. The answer denied infringement, and alleged that plaintiff's patent was invalid because it was anticipated by prior patents. The cause was referred to a special master. The master found that there was no infringement, and that plaintiff's patent was anticipated by prior patents. Exceptions filed to the master's report were overruled, and the report confirmed. The decree, from which this appeal is taken, dismissed the bill of complaint with prejudice and with costs to defendant.

The device for which the patent in suit was issued is called a "Spring wire collar snubber," and is made from a single piece of spring wire. It is described in the specification as follows:

"The invention consists of a one piece element made from spring material that is adapted for being worn in a manner to engage the under side of each of the collar ends and to engage the points of the collar and maintain the same in normal position and alignment. The central portion of the one piece element rests substantially horizontal when in normal wear, and a leg downwardly extends from the ends of the horizontal portion with a pointed end adapted for engagement with the underside of the collar point and to maintain the same in a taut condition and in normal position and alignment. Offsets are placed near the end of the horizontal portion of the body element with upturned bends being placed at opposite sides of the body elements. The purpose of the upturned loops is to engage upon and rest upon the neck tie of the wearer and to maintain the tie in precise placement and position. A return bend is placed at the end of the bottom of each leg, with a point terminating the leg. The purpose of the return bend is to limit the distance that the point may penetrate the collar and to facilitate a compression being developed with the leg portion of the device, to thereby develop a

tension with the end and point portion of the collar. To facilitate the placement of the device, and to develop a tension within the collar end and point, I place a fold or loop within each of the leg elements at a point that may be easily grasped by the user."

There are five claims to the invention, all of which are in issue. The device, as claimed in the first three claims has the following features: (1) The ends of the spring wire are needle points, terminating in half circle involuted loops; (2) legs upwardly extending from such loops; (3) a hand engaging loop disposed upon each leg; (4) inverted U-shaped bends terminating each of the legs; (5) and a central portion forwardly extending from said bends. Claims 4 and 5 cover the same structure, except that "a hand engaging loop disposed upon each leg" is not included.

It is here pertinent to note that both parties construe plaintiff's patent as one covering a combination of elements, and speak of each feature enumerated as being an element. The specification, however, states that "the invention consists of a one piece element. * * *" Since the parties have assumed that plaintiff's device consists of a combination of elements, we will decide the case on that theory, without expressing an opinion, either one way or the other, as to the justification for the assumption.

The master found the patent in issue to be anticipated. He said in his report:

"Noakes discloses every element of plaintiff's structure, with the exception of the hand manipulating loops or bends in the legs and the penetrating points. He discloses legs ending in studs instead of points to engage the free ends of the collar.

"Noakes shows legs terminating in U-shaped bends, a crossbar, the central portion forwardly extending from said legs. He discloses means for penetrating the collar fabric. Noakes' U-shaped bends, crossbar, legs and studs will perform every function which Dailey's U-shaped bends, crossbar, legs and penetrating points will perform.

"If Dailey's crossbar can exert any outward pressure upon the tie knot, Noakes' crossbar does the same. The question then remaining is whether or not Dailey exercised invention by including among his elements means of limited penetration, not requiring previously formed holes in the fabric, such as eyes or buttonholes, either

alone or with the hand manipulating loops or bends in the legs.

"Unfortunately, however, Vanderbilt and Ahrens both disclosed penetrating points, whose powers of penetration are limited by bends or loops immediately adjacent thereto. They are part of the same art and Dailey is presumed to have knowledge of the state of that art."

With respect to the feature of penetration points, the master further stated:

"This particular method was already known. It was disclosed by Ahrens who used it for the same purposes and in the same manner as did Dailey. Vanderbilt discloses like means, used however to engage the tie rather than the collar points, but the principle is identical."

We agree with these statements of the master. Appellants contend that Noakes' device is distinguishable because (1) when the Noakes' device is used as intended by him, it is necessary either to loosen or to remove the tie when removing the device; (2) it does not keep necktie in place because if there was sufficient tension on the legs to do so, the tension would distort the buttonholes at the points of the collars, in which the studs of the device are placed; (3) it is not concealed; (4) it does not maintain itself by its own inherent characteristics, but depends on buttonholes in the points of the collar for support.

■ With respect to the first point, it is plainly seen by an inspection of Noakes' patent, that the Noakes device may be removed without loosening or removing the tie, Noakes' patent is not distinguishable on that ground, because as was said in Roberts v. Ryer, 91 U.S. 150, 157, 23 L.Ed. 267: "It is no new invention to use an old machine for a new purpose. The inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." See, also, Ansonia Co. v. Electrical Supply Co., 144 U.S. 11, 18, 12 S.Ct. 601, 36 L.Ed. 327.

There is no merit in the second claimed distinction. It appears to us that in both devices the upper points or bends of the devices rest in the folds of the collar, one bend being on either side of the knot of the necktie. It is these bends which hold the knot in place, except possibly that it might be an outward pressure of the crossbar. The bends of the Noakes' device are held in place because of the studs in the collar points, whereas in the Dailey device the bends are held in place by the pointed ends inserted in the fabric of the collar points. The only difference is the manner in which the bends are fixed in place. The difference is a matter of form, and not a difference in manner of holding the knot in place. If it is the outward pressure of the crossbar in Dailey's device which holds the knot in place, then as said by the master: "If Dailey's crossbar can exert any outward pressure upon the tie knot, Noakes' crossbar does the same." The outward bend of the crossbar appears in each device. There could be no difference in that respect.

■ The other two claimed distinctions are results, and we may concede, better results, obtained by using the needle points in place of the studs used by Noakes. The question for determination, therefore is: Did plaintiff by using needle points merely substitute an equivalent for the studs? That the question as stated is correct may be seen from the following quotation from Smith v. Nichols, 21 Wall.(88 U.S.) 112, 119, 22 L.Ed. 566:

"But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent."

The master found that:

" * * * Any mechanic skilled in the art, upon being called to produce the desired results, having before him Noakes, Ahrens and Vanderbilt, would, without the exercise of anything more than mechanical skill, combine the penetration limited points of Ahrens and Vanderbilt with the remainder of the Noakes structure. The Master finds that Dailey exercised no invention in substituting penetration limited points for studs."

■ In determining whether the points are equivalents of the studs, the following from Gould v. Rees, 15 Wall.(82 U.S.) 187, 194, 21 L.Ed. 39, is illuminative:

"Bona fide inventors of a combination are as much entitled to equivalents as the inventors of other patentable improvements; by which is meant that a patentee in such a case may substitute another ingredient for any one of the ingredients of his invention if the ingredient substituted performs the same function as the one

omitted and was well known at the date of his patent as a proper substitute for the one omitted in the patented combination."

See, also, Seymour v. Osborne, 11 Wall. (78 U.S.) 516, 556, 20 L.Ed. 33; Gill v. Wells, 22 Wall. (89 U.S.) 1, 15, 28, 22 L. Ed. 699; Fuller v. Yentzer, 94 U.S. 288, 297, 24 L.Ed. 103.

In accordance with this rule, we must determine (1) whether the points of plaintiff's device perform substantially the same function as the studs of Noakes' device; (2) if so, whether such points were well known as a substitute for the studs.

The Noakes' device is held in place by cooperation of several things. The studs hold the upper bends of the device in the folds of the collar, and that is the function of the studs. That is likewise the function of plaintiff's points. Both the studs and the points may be so placed that the points of the collar are taut. So far as is apparent to us, the studs and the points serve exactly the same function.

With respect to whether or not plaintiff's points were known as a substitute for the studs the master found that Ahrens and Vanderbilt disclosed the method. The Ahrens point is substantially identical to that used by plaintiff. The Ahrens' collar supporter has two parts, which, said Ahrens in his specification, "are adjustable with relation to each other, one part which may be called the base member being adapted to fit over the collar button and the other part which may be called the collar supporting member being adapted to hold up the front of the collar and also to provide hooks or pins for holding the corners of a collar to suit the wearer."

In view of this patent, that plaintiff's points were a well-known substitute for Noakes' studs cannot be questioned.

Plaintiff contends that "anticipation cannot be made out by constructing an hypothetical combination composed of individual elements selected from several examples of the prior art." That rule has no application to this case, for our question is simply a question of equivalents. Plaintiff also contends that appellee has not sustained the defense of want of invention. He says that "the truest test of invention is the new and beneficial results attained by the patented device in the light of the prior art"; that the burden of proving lack of novelty and invention rests on appellee; that the issuance of the patent to Dailey raises a presumption of validity of the patent; that the commercial success of plaintiffs' device is persuasive evidence of the existence of both utility and invention. If there was doubt as to the defense, these rules might be applicable, but the proof of anticipation is too clear, and overbalances the plaintiffs' evidence.

Plaintiff also states that the manufacturer of the alleged infringing device has by imitating plaintiffs' device paid its tribute to the patented article and that such fact is persuasive evidence of invention. A more appropriate statement is that said manufacturer has paid tribute to the Noakes' device.

Claims 4 and 5 of plaintiff's patent, which do not include the hand engaging loops on the legs, are anticipated and are therefore invalid, because those claims describe a device which is equivalent of the Noakes' device.

The first three claims are likewise invalid if the addition of the hand engaging loops on the legs was not invention.

Plaintiff contends that the leg loops have two functions: (1) To facilitate application of the device; (2) to assist in flexing the legs when the device is being applied. The master found:

"The hand manipulating loops or bends found in the leg element constitute nothing more than handles. It is admitted that they have no effect upon the operation of functioning of the device. They are placed there solely to facilitate installation."

One of plaintiff's witnesses testified that the loops had no other function than to facilitate installation. One of appellee's witnesses testified that the loops gave a little elasticity to the leg members when in applied position. The specification of the patent states: "To facilitate the placement of the device, and to develop a tension within the collar end and point, I place a fold or loop within each of the leg elements at a point that may be easily grasped by the user." The first two claims state that the loops are "for facilitating the manipulation of the device." The third claim states that the loops are "for assisting manipulation of the assembly."

In this state of the record the master found:

"The hand manipulating loops or bends found in the leg element constitute nothing more than handles. It is admitted that they have no effect upon the operation of functioning of the device. They are placed there solely to facilitate installation."

Under Equity Rule 61½, 28 U.S.C.A. following section 723, the master's finding is presumptively correct. When the evidence, together with the presumption of correctness, is considered, it is apparent that the master's finding on this fact must be sustained.

This portion of the case is controlled by the rule announced in Application of Pierson, 58 App.D.C. 232, 26 F.(2d) 1010, "that there is nothing inventive in attaching handles to any otherwise old receptacle or article." Since the addition of the hand manipulation loops on the legs did not impart invention to plaintiff's device, it follows that the device described in the first three claims of the patent issued to plaintiff was anticipated by Noakes, and therefore such claims are invalid.

Affirmed.