BUTCHER BOY REFRIGERATOR DOOR CO., an Illinois corporation, Plaintiff,

v.

PHILLIPS REFRIGERATION PRODUCTS CO., a California corporation, Defendant.

No. 33440.

United States District Court
N. D. California. S. D.

Aug. 14, 1956.

Flehr & Swain, San Francisco, Cal., for plaintiff.

Threedy & Threedy, Chicago, Ill., Naylor & Neal, San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

The complaint herein charges defendant with infringement of four United States patents on hinges, consisting of one design patent and three mechanical patents.[1]

Defendant by its answer denied infringement and the validity of the patents in suit. In its amended answer the defendant alleged that patents 2,521,756, 2,535,324 and 2,586,573 are invalid for failure to comply with Sec. 112 of the Patent Act of 1952, 35 U.S.C.A. requir-

| 1. Patent No. | Patentee | Granted | Filed |
| --- | --- | --- | --- |
| D-157,294 | R. E. Slopa | Feb. 14, 1950 | Nov. 10, 1947 |
| 2,521,756 | R. E. Slopa | Sep. 12, 1950 | Nov. 24, 1947 |
| 2,535,324 | G. W. Slopa | Dec. 26, 1950 | Feb. 17, 1948 |
| 2,586,573 | R. E. Slopa | Feb. 19, 1952 | Mar. 26, 1948 |

ing an applicant for patent to clearly and specifically point out what is claimed to be new.

The plaintiff in this action, Butcher Boy Refrigeration Door Company is an Illinois corporation having its place of business in Harvard, Illinois. Plaintiff is the owner of the four patents in suit and manufactures and sells Butcher Boy hinges. The defendant, Phillips Refrigeration Products, Inc., is a California corporation having its place of business in San Francisco. Defendant is a distributor of the accused Birkenwald hinges which are manufactured by S. Birkenwald and Co., Inc., of Portland, Oregon. At the time that plaintiff began its hinge business there were many manufacturers of hinges in the United States, the most prominent being the Jamison Cold Storage Door Company of Hagerstown, Maryland. Various Jamison devices were introduced at the trial and the defendant relied upon them as prior art. Plaintiff is at present the second largest manufacturer of refrigerator doors and refrigerator door hardware in the United States, and its devices have met with considerable commercial success. Among those to whom plaintiff has sold hardware is S. Birkenwald and Co. of Portland, Oregon. This company purchased several hundred of plaintiff's hinges and applied them to many doors which it manufactured and sold up and down the West Coast. S. Birkenwald Company ultimately designed its own hinges, and at the time the designs were made it had before it all of the prior art hinges as well as plaintiff's hinges. Mr. Nau, president of Birkenwald pointed out slight differences in the hinges, but in effect admitted that the parts of the hinges were identical and that their functions were identical.

The claims of each of the three mechanical patents in suit are for an alleged combination. As to such claims, the Supreme Court of the United States in that often cited case of the Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 340 U.S. 147, 71 S.Ct. 127, 130, 95 L.Ed. 162, said:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

With this introductory statement of law, the court will discuss each of the mechanical patents under its own individual heading.

### Patent No. 2,521,756.

Patent No. 2,521,756, hereinafter referred to as 756, was granted to Robert E. Slopa on an overlapping hinge on an application filed November 24, 1947. In general the hinge consists of a plate 21 which is secured to a door frame, and a second plate 29 which is secured to the door itself. A link 24 connects the two plates. A bolt 35 extends through the link 24 and the base plate 21 and means are provided for moving the end of the link toward and away from the plate 21 with the result that the pivot 27 about which the door swings may likewise be moved toward and away from the base plate 21. Moving the pivot point 27 permits one to compensate for wear of the gasket 17 between the door and the door frame. Defendant contends that long prior to any alleged date of conception of the hinge shown and described in patent 756, a hinge embodying without exception all of the elements of this hinge was manufactured by Jamison Cold Storage Door Company of Hagerstown, Maryland,

hereinafter referred to as the Jamison hinge.[2]

This Jamison hinge, like the hinge of patent 756 includes two mounting plates which are of the same identical structure as the mounting plates 21 and 29 of patent 756 in suit. The Jamison hinge (Def. Ex. A) includes a link 25 pivotally mounted at its outer end to one of the mounting plates and terminating in an inner end portion providing an arm 28a disposed substantially parallel to such mounting plate. Said link 25 in the Jamison hinge, like the link of patent 756, is pivotally connected inwardly of its inner end portion to the other mounting plate so that such other mounting plate, when attached to a door, will have a swinging movement to open and closed position about its pivotal connection 27 with the link. In the Jamison hinge is a bolt 31 identical to bolt 34 of the hinge of patent 756. Such bolt 31 is carried by one of the mounting plates at right angles thereto and extends outwardly through the opening 33 in the arm of the link. On the bolt of the Jamison hinge, like the bolt of patent 756, is a spring 34 between the arm and the mounting plate to which the bolt is attached. Threaded on the outer end of the bolt of the Jamison hinge, like the bolt of patent 756 is a nut 36–37 for applying pressure to the arm 28a to tilt the link 25 about its pivotal connection with the mounting plate to which it is attached and to hold the link 25 at an adjusted angle relative to such mounting plate.

The record reveals that Robert E. Slopa, in order to assemble 756, reversed the mounting of the Jamison hinge, as shown in patent, 1,987,512, i. e., he mounted the plate which carries the link, on the door frame instead of on the door, the proper mounting position for the Jamison hinge; and in order to increase the mechanical efficiency of this "reversed" Jamison hinge, diagonally positioned the link 24 (25 in Jamison) at about a 45 degree angle rather than allowing it to remain at ninety degrees.

In the court's view the reversal of the mounting position of Jamison does not constitute invention and involves only a matter of choice. The claims of 756 are drawn to a hinge and must be limited to the elements of a hinge. These elements are not changed to any great degree, either in structure or function from Jamison and in so far as structure is concerned the claims of 756 read directly on Jamison.

As to the angling of the link, this in the court's view required nothing more than the knowledge of a mechanic skilled in the trade, for all that was hoped to be accomplished by this minor change in Jamison was a more mechanically efficient arrangement of elements which were already well known to the hinge industry.

In substantiation of the fact that there is not one element which is found in 756 which is not found in Jamison, George W. Slopa, brother of the patentee of patent 756, stated the following under cross-examination:

"Q. In other words, am I correct in this statement. Should the court understand that every part [element] that you find in plaintiff's exhibit No. 3 [model of hinge of patent 756] is found in the Jamison hinge, plaintiff's exhibit 2? A. That is right."

The purpose of the spring and the link in both Jamison and in patent 756 is identical, i. e., to be able to adjust spring tension in order to reposition the pivot about which the door swings, so that as the gasket on the door wears and loses resiliency, the door may be brought closer to the door frame. This adjustment is accomplished in Jamison by loosening, and in 756 by tightening the nut, which in turn acts on the spring. Although plaintiff has utilized a different way of adjusting the spring, in view of the prior art cited above, the court concludes that inventiveness was not involved. The claims of both Jamison and 756 clearly reveal a method of manually adjusting a hinge for gasket wear by means of a

2. Leonard (inventor) Pat. No. 1,037,512, granted January 8, 1935.

spring and a nut. To reposition the nut and spring is not invention, but a matter of choice. For that matter, the results obtained by reversing Jamison and angling the link are not so startling or different from the results theretofore obtained as to lead one to conclude that such innovation was the result of inventiveness on the part of Robert E. Slopa. George Slopa testified as follows in this regard:

"Q. In that position of the Jamison hinge, mounted in the manner of the model [Def. Ex. A] before you, what does this hinge, which is plaintiff's Exhibit 3 [model of hinge of patent 756] accomplish that is not accomplished by the Jamison hinge mounted in the manner that I have just pointed out to you with the plates reversed? A. They serve practically the same purpose."

■ The court has taken into consideration the admonition that great discovery may often times be spelled out by seemingly simple innovations. Innovations, which once revealed appear obvious to the viewer. Paraffine Companies v. McEverlast, Inc., 9 Cir., 1936, 84 F.2d 335. However, if the combination claimed is an obvious one for attaining the advantage proposed, it does not show inventiveness. Webster Loom Co. v. Higgins, 1881, 105 U.S. 580, 26 L.Ed. 1177. Hinges of the type of the patents in suit have been manufactured and nationally advertised and sold by the Jamison Cold Storage Door Company of Hagerstown, Maryland, for many years prior to the sale by plaintiff of such hinges. In fact Jamison is the largest manufacturer of such hinges and currently is selling 50% more of such hinges than are sold by plaintiff. The main function of all the hinges under consideration other than support for the refrigerator door itself, is to effectuate a seal between the door and the door frame. Both Jamison and 756 accomplish this result. George Slopa, himself testified that Jamison could be mounted in either position with respect to the door and the door frame, and that irrespective of how mounted, perform the function of effecting a seal between the door and the door frame. Patent 756 does not alter or change the construction of elements making up the Jamison hinge. Nor does 756 perform some new or different function—one that has unusual or surprising consequences. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Toledo Pressed Steel Co. v. Standard Parts, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. If it had, then one could equate the impact of said new function against the prior art, in arriving at a conclusion as to "patentability". Hookless Fastener Co. v. Greenberg, D.C.1937, 18 F.Supp. 296; Gasoline Products Co. v. Coe, 1936, 66 App. D.C. 333, 87 F.2d 550.

■ The decision of the Court of Appeals of this Circuit in Elliott Core Drilling Co. v. Smith, 9 Cir., 50 F.2d 813, 816, is quite relevant in this regard.

"A mere carrying forward of the original thought, a change only in form, proportions, or degree, doing the same thing in the same way, by substantially the same means, with better results, is not such an invention as will sustain a patent. Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267; Belding Mfg. Co. v. Challenge Corn-Planter Co., 152 U.S. 100, 14 S.Ct. 492, 38 L.Ed. 370; Market St. Cable Ry. Co. v. Rowley, 155 U.S. 621, 629, 15 S.Ct. 224, 39 L.Ed. 284; Railroad Supply Co. v. Elyria Iron [& Steel] Co., 244 U.S. 285, 292, 37 S.Ct. 502, 61 L.Ed. 1136." See to the same effect: Dailey v. Lipman Wolfe & Co., 9 Cir., 88 F.2d 362, at page 365; Photochart v. Photo Patrol, 9 Cir., 189 F.2d 625, at pages 627–628; Marquis v. Los Angeles City School, 9 Cir., 100 F.2d 788.

■ The fact that the Jamison hinge, when mounted in reverse position, may not be as efficient as 756 has also been considered by the court. However, since the only additional adjustment necessary to increase the efficiency of the Jamison

hinge is to diagonally position the link, it is hard to see what invention was required on the part of the inventor of 756. The alleged invention in this case did not spring from some glaring deficiency in the Jamison hinge but rather from the natural desire of one manufacturer to distinguish his wares from the wares of another. Although there was no testimony introduced showing that Jamison had been reversed before, about all one can say about 756 is that Slopa adapted Jamison's principles and operation. Slopa, however, added nothing new to the art of hinge making that a mechanic skilled in the art could not have developed after experimenting with the prior art.

### Patent No. 2,535,324.

Patent 2,535,324, hereinafter referred to as patent 324, was granted to George W. Slopa on December 26, 1950, on a compensating hinge. Claims 1, 2, 3, 4, 5 and 7 are in issue. Claims 2 and 7 are admittedly infringed if valid. The hinge shown and described in patent 324 is substantially the same as the hinge shown and described in patent 756, except that there has been provided in patent 324 in the arm 24, a well 37 within which is arranged a spring 38 between the bottom wall of the well and washer 39 threaded upon the bolt 32.

The question presented for decision is whether said spring and well is invention over the prior art. It is the court's view that the claims of patent 324 are invalid as not defining invention over the prior patent to Slopa 756 or the prior art Jamison hinge.

Those elements of patent 324. which effect a seal between the door and the door frame are identical to those of patent 756 which accomplish the same result. In other words there is an adjustable sealing device whether one spring is employed (as in 756) or two springs as in 324. Leonard, the inventor of Jamison was entitled to a patent because he advanced the art of hinge-making by revealing a readily adjustable hinge. Slopa 756 may have some small mechanical advantage over Jamison; it does not in the court's view advance the art, but is merely the work product of the application of mechanical skill. Slopa 324 is again, a further mechanical advance. Instead of one spring, two springs are utilized. Again, the court can not see an advance in the art. To modify Jamison to arrange the spring 34 between the arm 28a and the washer 35, rather than between the arm 28a and the plate 21 does not produce a new or unexpected result and appears to only be a matter of choice. There is possibly some mechanical improvement, but not of such quality or nature as to warrant patentability. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973; Hollywood-Maxwell Co. v. Street's of Tulsa, 10 Cir., 183 F.2d 261; Shaffer v. Armer, 10 Cir., 184 F.2d 303.

Furthermore, the presence or the absence of a well in the arm of the link 23 of the Slopa patent 324 does not in anyway effect or alter the function of this spring. George W. Slopa, the patentee of patent 324, testified that the spring 38 could perform its function whether mounted in a well or upon the arm of the link 23. In this connection he testified:

"Q. * * * In patent 324, if I remove the spring and eliminate the well and make the arm solid, that is the arm of the link 23 solid, and then thread the nut 42 on the top of the arm, I get the same result, do I not, as I would in patent 756, * * * as far as creating a seal between the door and the door frame, right? A. As far as creating a seal, you get the same result.

"Q. Get the same thing I could dispense with the spring and the well for that purpose? A. For that purpose, that's right."

Plaintiff at the trial of this case laid emphasis upon the claim that by use of two springs as shown in patent 324, such spring would absorb any shock imposed upon the hinge or upon the door. In partial support of this theory plaintiff

states, "Note for example page 1, column 1, line 26 of the patent where the inventor states that one of the objects of his invention is to provide a yieldable overlap hinge." However, this same language can be found in patent 756. "It is therefore an object of the present inventor to provide a novelly constructed rugged yieldable overlap hinge." The patentee Leonard of the Jamison hinge stated the following in his patent, "If during the swinging of the door, the edge thereof adjacent the mountings should strike against an obstruction, the spring will yield allowing the edge of the door to stop movement out of contact with the frame, and this prevents the breaking of the parts of the mounting." Here, too, it can be seen that Leonard added to the art, and the Slopas' have attempted mechanical improvement. This improvement was brought about by the application of mere mechanical skill, and would suggest itself to any person skilled in the art.

The Court of Appeals for the Ninth Circuit in Kwikset Locks, Inc., v. Hillgren, 210 F.2d 483 at page 486, said:

"The Supreme Court has recently considered the problem of patentable combinations and has established certain criteria and standards which the lower federal courts must apply in determining whether a combination patent is valid. The Supreme Court directs us to 'scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions * * * obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men.' Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra. The Supreme Court further requires that in order for a combination patent to be upheld, there must be a specific finding that the old elements which made up this device perform an additional and different function in combination, than they perform out of it."

See to the same effect the case of Sargent v. Hall Safe & Lock Co., 1885, 114 U.S. 63, 5 S.Ct. 1021, 1029, 29 L.Ed. 67, which case dealt with an attempt to patent a time guard on a combination lock. The device there sought to be patented rendered the lock incapable of being unlocked until the arrival of a predetermined hour. It was admitted that a time guard had previously been employed in connection with a key lock. The Supreme Court, holding the patent invalid, quoted with approval the Board of Patent Examiners:

" 'Nor, so far as we see, has any invention been exercised. The time-movement was originally invented to prevent locks from being prematurely unlocked, and, when once the combination had been invented, it is obvious that it was as applicable to one form of locks as to another; and, to grant a patent for the union of the time-movement with every old form of lock, or with every new form which might appear, would manifestly place unjust restrictions on the original invention and defeat the very purpose of the law.' "

Further, the court is in agreement with defendant's contention that if the spring and the well of 324 is a patentable improvement over the prior art, such patent is invalid for overclaiming the invention. United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232; General Electric Company v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402. By his claims, George Slopa, patentee of patent 324 did not claim as his invention solely said spring and well, but rather claimed the entire combination without pointing out what was new from what

was old as required by Section 112 of the Patent Act of 1952.

In United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 170, 87 L.Ed. 232, the court said:

"The statutory requirement of particularity and distinctness in claims is met only when they clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise."

In General Electric Company v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 901, the Supreme Court of the United States said:

"We need not inquire whether Pacz exhibited invention, or whether his product was anticipated. *The claim is invalid on its face.* It fails to make a disclosure sufficiently definite to satisfy the requirements of R.S. § 4888, 35 U.S.C. § 33, 35 U.S.C.A. § 33. That section requires that an applicant for a patent file a written description of his discovery or invention 'in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains * * * to make, construct, compound, and use the same; * * * and *he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery.'* We may assume that Pacz has sufficiently informed those skilled in the art how to make and use his filament. The statute has another command. Recognizing that most inventions represent improvements on some existing article, process, or machine, and that a description of the invention must in large part set out what is old in order to facilitate the understanding of what is new, *Congress requires of the applicant 'a distinct and specific statement of what he claims to be new, and to be his invention.' Patents*, whether basic or for improvements, *must comply accurately and precisely with the statutory re-quirement as to claims of invention* or discovery. The limits of a patent must be known for the protection of the patentee, the encouragement of the inventive genius of others, and the assurance that the subject of the patent will be dedicated ultimately to the public. The statute seeks to guard against unreasonable advantages to the patentee and disadvantages to others arising from uncertainty as to their rights. The inventor must 'inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.' The claims 'measure the invention.' * * * Pacz did not adequately set out what he 'claims to be new.' "

See to the same effect: Aetna Ball & Roller Bearing Co. v. Standard Unit Parts Corp., 7 Cir., 198 F.2d 222; Application of Hudson, 205 F.2d 174, 40 C.C.P.A., Patents, 1036; Borg-Warner Corp. v. Mall Tool Co., 7 Cir., 217 F.2d 850.

The statement appearing in the decision of the Supreme Court of the United States in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, at page 149, 71 S.Ct. 127, 129, 95 L.Ed. 162, is here apropos and may have well been written for this case. There the Supreme Court said:

"In the third place, if the extension itself were conceded to be a patentable improvement of the counter, and the claims were construed to include it, the patent would nevertheless be invalid for overclaiming the invention by including old elements * * *. Bassick Mfg. Co. v. R. M. Hollingshead Corp., 298 U.S. 415, 425, 56 S.Ct. 787, 791, 80 L.Ed. 1251; Carbice Corp. of America v. American Patent Developments Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819."

Upon these premises, patent 324 is invalid.

338

## Patent 2,586,573.

Slopa Patent No. 2,586,573 (hereinafter referred to as Patent 573) was granted to Robert E. Slopa on February 19, 1952 on an infitting type hinge, so-called because of the fact that the door with which it is usually associated fits into the doorway opening. This patent has four claims all of which are in issue and are admittedly infringed. Just as defendant cited a Jamison overlap hinge as anticipating Slopa patent 756, it has cited a Jamison infitting type hinge,[3] as anticipating Slopa 573. This Leonard patent was not cited during the prosecution of the application on which patent 573 issued.

A study of Jamison, 2,208,310, (hereinafter referred to as 310), and Slopa 573 shows that all of the elements of the claims of the Slopa patent 573 with the exception of an additional innermost spring 35, are clearly disclosed in 310 where such elements are related to each other in the identical manner to accomplish substantially the identical result claimed by Slopa in patent 573. The spring 35, has been added to Jamison 310, to result in Slopa 573, in a fashion very similar to the addition of the spring and the well to the reversed Jamison hinge 512 to produce Slopa 324 heretofore discussed. The use of two springs on opposite sides of the link is shown to be old in the George W. Slopa patent 324. It was established by the testimony of George Slopa that the two springs of patent 573 perform substantially the same function as do the two springs of patent 324. In this connection he testified:

"Q. Now I am not sure whether I asked you yesterday this question, and if I didn't, I would like to do so now. Now is it a fact, Mr. Slopa, that the springs 35 and 36 of patent 573 perform substantially the same function as the springs 38 and 43 of patent 324? A. Yes, they do."

In view of the fact that George Slopa patent 324 teaches the use of two springs on opposite sides of the link of 23 it would be within the skill of the ordinary mechanic to provide a second spring between the nut 15 of Leonard 310 and the link L, should occasion require. Upon making such addition to the Jamison hinge 310, substantially the same results are accomplished as are claimed to be accomplished by the patentee Robert E. Slopa of patent 573.

Plaintiff presents the same argument in support of 573 as he did in support of 324: that Jamison 310 requires a relaxing of spring tension in order to urge the door inwardly to take up slack caused by gasket wear, while plaintiff's device operates by increasing spring tension. The answer to this is found in the section of this opinion dealing with patent 324. The court is of the view that the arrangement of elements of 573 is not the result of invention, that any mechanic skilled in the art given the problem of improving Jamison could have arrived at the work product of Slopa.

The record in this case clearly reveals that the employment of two springs in a hinge of the type manufactured and sold nationally by Jamison would not have any material effect on the salability of such hinge. This fact is borne out by the testimony of Mr. Kelker called as a witness on behalf of plaintiff. He testified that a changeover by his company from a hinge using two springs to one using one was unaccompanied by a sales decline after this changeover. Despite all statements to the contrary, the Jamison hinge was the first adjustable hinge with shock absorbing qualities. In all the work done by the Slopas there does not appear to be an advancement to the art of hingemaking in an inventive sense. The Slopas may have refined to a degree, in a mechanical sense, the mechanism of the Leonard hinges, by virtue of their technical background and knowledge, but the fact remains that Leonard is the one who first revealed a new discovery to the world.

3. Leonard (inventor) No. 2,208,310.

It is clear that the state of the art at the time that Robert E. Slopa, the patentee of patent 573, made the device of such patent, the art was such that one dealing with the common refrigerator door hinges and the elements used in connection therewith, upon adaption of the same to modern use, exercised nothing but mechanical skill. As stated in Smith v. Nichols, 21 Wall. 112, 88 U.S. 112, 22 L.Ed. 566:

"A mere carrying forward of new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same means with better results, is not such achievement as will sustain a patent."

See to the same effect Railroad Supply Co. v. Elyria Iron Co., 244 U.S. 285, 37 S.Ct. 502, 61 L.Ed. 1136.

It is the court's view that patent 573, as patent 324, is invalid for failure to clearly set out what is claimed to be new as is required by Sec. 112 of the Patent Act of 1952. A reading of the four claims of patent 573 shows that patentee Robert E. Slopa claimed not only the alleged new spring 35, but also the old combination of the commercial Jamison hinge, and thereby overclaimed the basis of his claim for invention. Having done so, under the authorities, patent 573 is invalid. United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232; General Electric Co. v. Wabash Appliance Co., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; and the Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra.

### D–157,294.

It is defendant's claim that the design patent in suit is clearly invalidated by the prior art patent to Leonard, No. 2,208,310 which discloses the commercial Jamison hinge. To entitle an applicant to a design patent there must be originality and the exercise of the inventive faculty. Mere mechanical skill, whether of the artisan or of the artist, is insufficient. Associated Plastic Companies v. Gits Molding Corp., 7 Cir., 1950, 182 F.2d 1000. More is required for a valid design patent than that the design be new and pleasing enough to catch the trade; it must be the product of invention, by which it is meant that conception of the design must demand some exceptional talent beyond the skill of the ordinary designer. Neufeld-Furst & Co. v. Jay-Day Frocks, 2 Cir., 112 F.2d 715; see also S. Dresner & Son v. Doppelt, 7 Cir., 120 F.2d 50; Zangerle & Peterson Co. v. Venice Furniture & Novelty Mfg. Co., 7 Cir., 133 F.2d 266; Hueter v. Compco Corp., 7 Cir., 179 F.2d 416.

[8] The record before the court shows the design patent in suit in all its material features, considered as a whole, to be devoid of patentable invention.

It is true as plaintiff states that the leaf design of the Leonard patent is provided with portions 24 and 24a extending beyond the ends of the remainder of the leaf. However, in the court's view it is equally true that the slight change in the Leonard design made by Slopa was not the result of invention and was not beyond the skill of an ordinary designer. For this reason said design patent must be declared invalid.

In accordance with the foregoing it is therefore by the court ordered that there be entered herein upon findings of fact and conclusions of law, judgment as follows:

1. That Slopa patent 2,521,756 is invalid as to both of its claims;

2. That Slopa patent 2,535,324 is invalid as to claims 1, 2, 3, 4, 5 and 7;

3. That Slopa patent 3,586,573 is invalid as to all four of its claims;

4. That Slopa's design patent D–157,-294 is invalid; and

5. That the defendant recover its costs expended herein.